**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**HENRY DAWSON,**

    Petitioner,

v.                                                **Civil Action No. 5:13cv155**
                                                     **Judge Stamp**

**TERRY O'BRIEN, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

On November 7, 2013, the *pro se* petitioner initiated this case by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, along with a Motion to Expedite. Petitioner paid the five dollar filing fee on November 15, 2013. On November 18, 2013, the respondent was directed to show cause why the petition should not be granted. On January 2, 2014, the respondent filed a Motion to Dismiss or for Summary Judgment. Because petitioner was proceeding *pro se,* on January 7, 2014, the Court issued a Roseboro Notice. Petitioner filed an Opposition to Respondent's Motion in Denial for Summary Judgment and Case Dismissal on January 29, 2014. On April 22, 2014, petitioner filed a Motion in Concern of Untimely Response to his Summary Judgment Supported with Motion to Expedite Due to Effect on Lost Time in Sentence Reduction.

This matter is before the undersigned for a report and recommendation pursuant to LR PL P 2, *et seq*.

## II. Background

The petitioner was convicted in the Northern District of Ohio of possession with intent to distribute cocaine, and on September 7, 2011, was sentenced to a term of 57 months

1

imprisonment to be followed by three years supervised release.[1] His projected good conduct release date is March 10, 2015.[2]

Petitioner has a verifiable drug abuse problem.[3]

### III. Contentions of the Parties

**A. The Petitioner's Contentions**

Petitioner challenges the Federal Bureau of Prison's ("BOP") determination that he is ineligible for sentence reduction via early release, pursuant to the provisions of 18 U.S.C. §3621(e), because of the nature of his prior convictions. He contends that "in reversible error," the BOP categorically excluded him from a 12-month sentence reduction and 6 months half-way house designation, after he satisfactorily completed the BOP's 500-hour Residential Drug Abuse Program ("RDAP").

Petitioner admits he did not seek relief through the BOP's administrative remedy process.

As relief, he seeks "immediate activation of the earned credit."

**B. Respondent's Motion to Dismiss or for Summary Judgment**

The respondent argues that the complaint should be dismissed or summary judgment granted in its favor, because

1) petitioner has failed to exhaust his administrative remedies;

2) 18 U.S.C. §3625 precludes judicial review of the BOP's substantive determination of inmates' eligibility for early release; and

3) the BOP properly followed Program Statement 5331.02 in determining that petitioner was ineligible for early release pursuant to 18 U.S.C. §3261(E).

---

[1] Dkt.# 17-2 at 2.

[2] Dkt.# 17-2 at 1.

[3] Dkt.# 17-2 at 9; Dkt.# 17-2 at 17; and Dkt.# 17-2 at 21.

C. **Petitioner's Response in Opposition**

Petitioner reiterates his arguments and attempts to refute the respondent's on the same.

## IV. Standard of Review

A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id.). (citations omitted), to one that is "plausible on

its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a

determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## V. Analysis

### A. Exhaustion of Administrative Remedies

According to the Prison Litigation Reform Act ("PLRA"), a prisoner filing an action under any federal law must first exhaust all available administrative remedies. Title 42 U.S.C. §1997(e)(a); Marshall v. Mouse, 2011 WL 3627102 (N.D. W.Va. 2011). The Supreme Court, addressing the exhaustion issue under Section 1997(e)(a), has determined that exhaustion under the Act is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and further, that exhaustion is required, even when

the relief sought is not available. Porter v. Nussle, 534 U.S. 516, 524 (2002) citing Booth v. Turner, 532 U.S. at 740, 741 (2001); see also, Anderson v. XYZ Correctional Health Servs.,Inc., 407 F.3d 674, 677 (4th Cir. 2005). In Woodford v. Ngo, 548 U.S. 81, 84 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Id. at 92 - 93 (emphasis added). Full and proper exhaustion under the PLRA requires a plaintiff to strictly comply with "all the time and procedural requirements of the prison grievance system." Id., at 93-94 (internal citations omitted). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford, *supra* at 92 - 93 (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons has established a three-tier Administrative Remedy Procedure, set forth in Title 28 of the Code of Federal Regulations, for the formal review of complaints filed by inmates relating to the conditions of their confinement. Title 28 C.F.R. § 542.10, *et seq*. Under this system, an inmate must first request an informal resolution by presenting an issue of concern informally to a staff member. Title 28 C.F.R.§542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is *no* response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the

proper form (a BP-9), to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. Title 28 C.F.R. § 542.14(a). If the inmate's request is denied, or if the inmate is dissatisfied with the Warden's response, or if there is no response from the Warden within twenty (20) days, the inmate may file an appeal with the appropriate Regional Office, using the appropriate form (a BP-10), within twenty (20) calendar days of the Warden's response or the date the response would have been due. Title 28 C.F.R. §§542. 18; 542.15(a). If the Regional Office denies relief, the inmate completes the administrative remedy process by appealing the decision to the Office of General Counsel, or the "Central Office," in Washington, D.C., using the appropriate form (a BP-11), within thirty (30) calendar days of the date the Regional Director signed the response. Id. The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. Id.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed. Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is

not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, the facts are not in dispute. The petitioner admits that he did not attempt to exhaust his administrative remedies; the respondent concurs, and notes that in all the time petitioner has been incarcerated, he has only ever filed one administrative remedy on an unrelated matter. This, the respondent argues, proves that petitioner is aware of, and willing to avail himself of the administrative remedy process when necessary. Petitioner's response in opposition argues that "going through the BOP remedy process is a six month ordeal at best," and that if he had done so in this instance, he would have suffered even more loss of time.[4]

Nevertheless, recognizing that the PLRA mandates the exhaustion of administrative remedies and similar principles have been applied in habeas corpus actions, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. §2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D. W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir. 1997) *cert. denied*, 521 U.S. 1131 (1997)).[5]

---

[4] Dkt.# 20 at 11.

[5] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue, 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA, Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions, because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements. See also: Sewell v. Carter, (N.D. W.Va. Dkt.# 20 and 22)(1:13cv120); Hunter v. O'Brien, (N.D. W.Va. Dkt.# 33 and 37)(5:12cv101).

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been filed; the respondent has filed its dispositive motion; and petitioner has responded; the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits. However, even if petitioner were not required to exhaust administrative remedies before bringing this action, his claim is nonetheless without merit and should be denied.

**B. Petitioner's Eligibility for Early Release Under RDAP**

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). The Act is applicable to persons convicted of a "nonviolent offense" and allows the BOP to reduce a prisoner's sentence by up to one year as an incentive for the successful completion of the program. See 18 U.S.C. § 3621(e)(2)(B); see also 28 C.F.R. §

550.58. Initially, a Drug Abuse Program Coordinator ("DAPC") decides whether a prisoner qualifies to participate in the RDAP and is eligible for the sentence reduction. After that initial determination of eligibility, in accordance with BOP Program Statement 5331.02, the DAPC will request a review of the inmate's current offense and prior convictions from Designation and Sentence Computation Center's ("DSCC") legal staff.[6] Inmates may be deemed ineligible for early release if they are found to have felony convictions for any offense that has as an element the actual, attempted, or threatened use of physical force against the person or property of another, or an offense that involved the carrying of, possession, or use of a firearm or other dangerous weapon, during the commission of a crime.[7] Robbery and arson are two of the specified crimes.[8]

Here, petitioner is statutorily ineligible for early release by virtue of his prior convictions for Attempted Arson, Attempted Aggravated Arson, and Armed Robbery. After a February 8, 2012 Prior Offense Review of petitioner's criminal record by the DSCC legal department, he was found to be precluded from receiving a §3621(e) early release, pursuant to 28 C.F.R. §550.55(b)(4)(iii), because of his convictions in violation of Ohio Revised Code §2923.02; Ohio Rev. Code §2901.13; and Ohio Rev. Code §2909.02.[9]

---

[6] See 18 U.S.C. §3621(e), §7.b, Early Release Procedures.

[7] 28 CFR §550.55(b)(5).

[8] 28 CFR §550.55(b)(4)(iii).

[9] Petitioner was convicted of Attempted Arson in 1965, in violation of Ohio Revised Code §2923.02, which states in pertinent part, "[w]hoever violates this section is guilty of an attempt to commit an offense . . . An attempt to commit any other offense is an offense of the next lesser degree than the offense attempted . . ." In 1967, petitioner was convicted of Armed Robbery. At that time, Ohio Rev. Code §2901.13, stated in pertinent part that a person commits Armed Robbery when ". . . while armed with a pistol, knife, or other dangerous weapon, by force or violence, or by putting in fear . . . steal[s] from the person of another anything of value." In 1985, he was convicted of Attempted Aggravated Arson, in violation of Ohio Rev. Code §2909.02, which states in pertinent part, that a person is guilty of Attempted Aggravated Arson when they ". . . by means of fire or explosion, shall knowingly do any of the following: (1) Create a substantial risk of serious physical harm to any person other than the offender; (2)

10

Petitioner's claim that he was wrongfully denied his right to early release under §3621(e) misunderstands the provisions of §3621(e). Even though petitioner successfully gained admission to and completed the program, it still does not *entitle* him to early release, because § 3621 simply does not create an entitlement to early release. See Orr v. Hawk, supra (there is no protectible liberty interest in early release under § 3621(e)); Fonner v. Thompson, 955 F. Supp. 638 (N.D. W.Va. 1997) (same); see also O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991) (a statute that creates only a hope about a future discretionary decision by prison administrators is too speculative to create a liberty interest). Moreover, petitioner actually acknowledged his understanding that participation in the program did not *entitle* him to automatic early release, when he signed the agreement to participate in RDAP on September 10, 2012.[10]

Petitioner's argument that because his disqualifiying "lone prior conviction"[11] occurred 46 years ago, when he was only twenty years old,[12] it should not be considered, has no merit. Setting aside for the moment that petitioner has had *three* prior convictions for "actual, attempted, or threatened use of physical force against the person or property of another, or an offense that involved the carrying of, possession, or use of a firearm or other dangerous weapon, during the commission of a crime,"[13] not merely one, and at least one of those offenses was

---

Cause physical harm to any occupied structure; (3) Create, through the offer or acceptance of an agreement for hire or other consideration, a substantial risk of physical harm to any occupied structure."

[10] "I understand by my agreement to participate in the RDAP that if found qualified to participate, I am requesting a legal review of my case for determination of early release benefits under 18 U.S.C. §3621(e), and that *this eligibility is provisional, and may change.*" See Dkt.# 17-2 at 19 (emphasis added).

[11] Petitioner, now 67 years old, contends that "[f]or 40 plus years Henry L. Dawson remained free from any law enforcement confrontations." Dkt.# 20 at 14.

[12] Dkt.# 20 at 6.

[13] 28 CFR §550.55(b)(5).

committed as recently as 26 years ago,[14] there is simply no time limit for consideration of prior crimes specified in the statute.

Petitioner's claim that the BOP abused its discretion by taking into consideration factors that Congress did not intend it to consider, in denying him early release through RDAP, has no merit. While "[w]hile eligibility for early release under §3621(e)(2)(B) is open to all prisoners who meet the statutory requirements," the statute expressly vests the BOP with broad discretion to grant or deny sentence reductions to eligible prisoners. See 18 U.S.C. § 3621(e)(2)(B) ("the period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons") (emphasis added)." Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999).

As for petitioner's claim that he was "deemed eligible for RDAP" by virtue of his January 27, 2012 Notice of RDAP Qualification form, that proves nothing. Merely because he was initially deemed eligible for RDAP after his January 26, 2012 clinical interview does not mean he was assured an early release through RDAP. Such forms are merely an assessment of an inmate's eligibility for the program and do not create any enforceable rights for the inmate. See Royal v. Trombone, 141 F.3d 596 (5th Cir. 1998).

Relief should be denied.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Dkt.# 16) be **GRANTED** and petitioner's §2241 court-approved form petition (Dkt.# 1) be **DENIED and DISMISSED with prejudice**.

---

[14] The dates petitioner committed the offenses that resulted in his prior disqualifying convictions were: Attempted Arson on May 28, 1965; Attempted Aggravated Arson on October 9, 1985, and Armed Robbery on December 7, 1967. See Dkt.# 1-1 at 4.

Further, the undersigned recommends that petitioner's pending Motion to Expedite §2241 Hearing Deductible on BOP's Abuse of Administrative Discretion Now Fatal by Accruing in Penalty (Dkt.# 3) and his Motion in Concern of Untimely Response to his Summary Judgment Supported with Motion to Expedite Due to Effect on Lost Time in Sentence Reduction (Dkt.# 21) both be **DENIED as moot.**

**Within fourteen (14) days** of being served with a copy of this Recommendation, **or by June 2, 2014,** any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: May 19, 2014

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE